# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re** | |
| RICHARD J. HIETER, JR. | **Bankruptcy Case** |
| and HALA J. HIETER, | **No. 08-02931-JDP** |
| **Debtors.** | |

_____

# MEMORANDUM OF DECISION
_____

**Appearances:**

Jake Peterson, Boise, Idaho, Attorney for Debtors.

Kathleen McCallister, Kuna, Idaho, Chapter 13 Trustee.

MEMORANDUM OF DECISION - 1

## *Introduction*

On December 23, 2008, debtors Richard J. Hieter and Hala J. Hieter ("Debtors") filed a chapter 13[1] bankruptcy petition. Docket No. 1.[2] The following day, the chapter 13 trustee, Kathleen A. McCallister ("Trustee"), filed a Motion to Dismiss With a Bar to Refiling. Docket No. 12. In response, Debtors filed the Affidavit of Hala J. Hieter, Docket No. 23. The Court conducted a hearing on Trustee's motion on January 6, 2009. As allowed by the Court, both Debtors and Trustee filed post-hearing briefs. Docket Nos. 27, 28. Thereafter, the Court took the motion under advisement. This Memorandum constitutes the Court's findings and conclusions and disposes of Trustee's motion. Fed. R. Bankr. P. 7052; 9014.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2] Docket entries in this bankruptcy case are referred to as "Docket No.", while references to the dockets in Debtors' other bankruptcy cases will be individually designated.

MEMORANDUM OF DECISION - 2

*Facts*

On October 28, 1998, Debtors filed a chapter 7 petition;[3] they were

granted a discharge in that case on February 2, 1999.

On November 24, 2004, Debtors filed another chapter 7 petition

("2004 Case").  They were granted a discharge in that case on March 3,

2005.[4]

On February 6, 2008, Debtors commenced a  chapter 13 case[5] ("Feb.

2008 case").  Several significant events occurred in this case.

First, along with the petition, Debtors filed a proposed sixty-month

chapter 13 plan, in which Debtors offered to pay $510 per month to the

---

[3]  Case No. 98-03546-TLM.  Debtor Hala Hieter states in her affidavit that
the 1998 case was filed on July 10, 1998, but the Court's records indicate a
October 28, 1998 filing date.  The precise filing date, however, is immaterial here.

[4]  Case No. 04-04236-TLM.  Again, Debtor Hala Hieter's affidavit gives an
incorrect case filing date of March 3, 2005.  Instead, the Court's docket shows that
Debtors received their discharge in the 2004 case on March 3, 2005.  2004 Case
Docket Nos. 1, 6.  The correct filing date for this petition is crucial to the
disposition of Trustee's motion to dismiss.

[5]  Case No. 08-00190-JDP.

MEMORANDUM OF DECISION - 3

trustee for distribution to creditors.[6]  That plan was confirmed with some

minor modifications on March 25, 2008.[7]

Second, on June 13, 2008, creditor DaimlerChrysler Financial

Services America filed a motion for relief from the automatic stay to

enforce its security interest in Debtors' 2007 Dodge Caliber, which motion

was granted in an order entered on July 7, 2008.[8]

Finally, while Debtors were apparently current on their plan

payments at the time, on December 16, 2008, Debtors moved to dismiss the

Feb. 2008 case, pursuant to § 1307(b).[9]  On December 17, 2008, the Court

granted Debtors' motion and the Feb. 2008 case was dismissed.[10]

---

[6]  Feb. 2008 case Docket No. 2, ¶ 1.1.

[7]  Feb. 2008 case Docket No. 30.  Notably, in the order confirming this plan, Debtors' monthly payment was amended to provide for an initial payment of $510, followed by $658 per month for the remaining 59 months of the plan.

[8]  Feb. 2008 case Docket Nos. 32, 34.

[9]  Feb. 2008 case Docket No. 38.

[10]  Feb. 2008 case Docket No. 39.

MEMORANDUM OF DECISION - 4

Six days later, on December 23, 2008, Debtors commenced this chapter 13 case ("Dec. 2008 case"). They have proposed a chapter 13 plan calling for forty-nine monthly payments of $615 per month. Docket No. 2, ¶ 1.1. As noted above, on December 24, 2008, Trustee filed her motion to dismiss this case. Docket No. 12.

### *Analysis and Disposition*

Trustee contends that Debtors, through their serial filings, are attempting to manipulate the bankruptcy laws, and that their actions constitute an abuse of the bankruptcy process. Debtors freely admit that they sought dismissal of the Feb. 2008 case, yet filed the Dec. 2008 case just a few days later, solely to allow them to qualify for a discharge. However, they dispute that, in doing so, they engaged in any bad faith or abusive conduct.

Three Code sections are implicated in resolving Trustee's motion to dismiss. The first is § 1328(f) which limits a debtor's right to a discharge in the face of serial case filings under chapter 13. The second is § 109(g), which, under certain circumstances, limits a debtor's eligibility for

MEMORANDUM OF DECISION - 5

bankruptcy relief after that debtor's voluntary dismissal of a prior case.

Finally, § 1325(a)(7) addresses the impact of a debtor's bad faith conduct

on plan confirmation.  The Court will address each of these sections in

turn.

    1.  Serial Filings and § 1328(f).

    The Bankruptcy Abuse Prevention and Consumer Protection Act of

2005 ("BAPCPA") included several new provisions intended to curtail

perceived abuses of the bankruptcy system.  One of the new additions to

the Code was § 1328(f), which provides:

> Notwithstanding subsections (a) and (b), the
> court shall not grant a discharge of all debts
> provided for in the plan or disallowed under
> section 502, if the debtor has received a
> discharge –
> > (1) in a case filed under chapter 7, 11, or 12
> > of this title during the 4-year period
> > preceding the date of the order for relief
> > under this chapter, or
> > (2) in a case filed under chapter 13 of this
> > title during the 2-year period preceding the
> > date of such order.

MEMORANDUM OF DECISION - 6

11 U.S.C. § 1328(f).  There is little doubt that it was this statute that

prompted Debtors to dismiss the Feb. 2008 case, only to refile another

chapter 13 case a few days later.

Section 1328(f) provides, in part, that debtors may not receive a

discharge in a subsequent chapter 13 case if they received a discharge in a

chapter 7 case filed in the preceding four years, or in a chapter 13 case filed

in the preceding two years.  However, the language of the statute is

somewhat unclear concerning how these time limits are to be measured.

While there is no binding authority in this Circuit yet, those appellate

courts that have interpreted this new provision generally agree that the

starting point for calculating the time limitation on eligibility for a

discharge in § 1328(f) is the date of the filing of the prior petition, and not

the date of discharge in the prior case.  *See Carroll v. Sanders (In re Sanders)*,

551 F.3d 397, 404 (6th Cir. 2008); *Branigan v. Bateman (In re Bateman)*, 515

F.3d 272, 280 (4th Cir. 2008); *Gagne v. Fessenden (In re Gagne)*, 394 B.R. 219,

MEMORANDUM OF DECISION - 7

230 (1st Cir. BAP 2008).[11]  Those decisions carefully parse the language of

§ 1328(f) and reach identical conclusions.  This Court agrees with their

thoughtful analysis.

Debtors filed their chapter 7 case on November 24, 2004, and they

received a discharge in that case.  As a result, under § 1328(f), Debtors

were not eligible to receive a discharge in any chapter 13 case commenced

prior to November 25, 2008.  Therefore, Debtors were prohibited from

receiving a discharge in the Feb. 2008 case.  However, § 1328(f) did not

prevent them from receiving a discharge in the Dec. 2008 case.[12]  Debtors

concede, and the Court accepts, that it was because they were not eligible

---

[11]  Indeed, the *Sanders* court noted that every federal court to decide the
question definitively has reached a filing-to-filing interpretation of § 1328(f).
*Sanders*, 551 F.3d at 400.  Other courts have suggested, in dicta, that the clock
begins to run on the date of discharge.  *See e.g., In re Sidebottom*, 430 F.3d 893, 897
n. 1 (7th Cir. 2005); *In re Williams*, 394 B.R. 550, 567 (Bankr. D. Colo. 2008).

[12]  Had this Court adopted the "discharge-to-filing" approach to
interpreting § 1328(f), Debtors would not have been eligible to receive a
discharge in a new chapter 13 case until March 3, 2009.  Apparently, Debtors and
their counsel were confident that the Court would adopt a "filing-to-filing"
approach.

MEMORANDUM OF DECISION - 8

for a discharge in the Feb. 2008 case that they sought to dismiss it, and

then refiled a new chapter 13 case a few days later.

    2.  Who May be a Debtor Under § 109(g).

    The next issue for consideration in this case is whether Debtors were

eligible to be debtors in the Dec. 2008 case.   Section 109(g) is pertinent to

that issue, and provides:

> Notwithstanding any other provision of this
> section, no individual or family farmer may be a
> debtor under this title who has been a debtor in a
> case pending under this title at any time in the
> preceding 180 days if –
>> (1) the case was dismissed by the court for willful
>> failure of the debtor to abide by orders of the court, or
>> to appear before the court in proper prosecution of the
>> case; or
>> (2) the debtor requested and obtained the
>> voluntary dismissal of the case following
>> the filing of a request for relief from the
>> automatic stay provided by section 362 of
>> this title.

11 U.S.C. § 109(g).

    As noted above, in the Feb. 2008 case, creditor DaimlerChrysler

Financial Services America ("Creditor") moved for stay relief, a motion

MEMORANDUM OF DECISION - 9

which was later granted without objection from Debtors.[13]  In light of this,

if § 109(g)(2) is strictly applied, that Creditor obtained an order for stay

relief in the Feb. 2008 case effectively barred Debtors from filing the Dec.

2008 case.  But should § 109(g)(2) be construed strictly?

The Ninth Circuit BAP has held that "section 109 eligibility is not

jurisdictional".  *Valencia Bank v. Wenberg (In re Wenberg)*, 94 B.R. 631, 637

(9th Cir. BAP 1988).  Furthermore, despite the statute's seemingly

mandatory language (*i.e.*, "no individual . . . may be a debtor . . . if"), the

BAP has held that the bankruptcy court has discretion in deciding whether

to dismiss a case based upon § 109(g)(2).  *Home Sav. of Am. v. Luna (In re*

*Luna)*, 122 B.R. 575 (9th Cir. BAP 1991).  In *In re Luna*, a bankruptcy court

granted a mortgage creditor stay relief in the debtor's chapter 13 case, but

also ordered the creditor to provide the debtor with an accurate statement

as to the amount required to reinstate the delinquent mortgage.  The

---

[13]  The Court presumes the 2007 Dodge Caliber, the collateral for
Creditor's claim, was still in Debtors' possession when they filed the Dec.
2008 case, as it was listed on schedule G, although Debtors indicated that
they intended to reject the lease on that vehicle.  Docket No. 1.

MEMORANDUM OF DECISION - 10

debtor later obtained a dismissal of the bankruptcy case.  When the

creditor proceeded with the foreclosure allegedly without ever accounting

to the debtor for the amount of the delinquency, the debtor filed another

chapter 13 case.  The creditor appealed the bankruptcy court's refusal to

dismiss the second case under § 109(g)(2) to the BAP.  In affirming, the

panel explained that the impact of the application of § 109(g)(2) should be

considered when a bankruptcy court addresses a motion to dismiss:

> We decline to follow the line of authority which
> requires mandatory application of section
> 109(g)(2).  In this case, mechanical application of
> section 109(g)(2) would reward [a creditor] for
> acting in bad faith and punish [the debtor] for
> acting in good faith.  Accordingly, because
> "[l]egislative enactments should never be
> construed as establishing statutory schemes that
> are illogical, unjust, or capricious", we conclude
> that the bankruptcy court properly declined to
> apply section 109(g)(2) to [the debtor's] second
> bankruptcy petition.

*In re Luna*, 122 B.R. at 577 (quoting *Bechtel Constr., Inc. v. United Bhd. of*

*Carpenters & Joiners of America*, 812 F.2d 1220, 1225 (9th Cir. 1987)).  *See also*

*Greenwell v. Carty (In re Carty)*, 149 B.R. 601, 603 (9th Cir. BAP 1993)

MEMORANDUM OF DECISION - 11

(explaining that the "purpose behind § 109(g)(2) is to prevent abusive repeat filings: 'The obvious thrust of [§ 109(g)(2)] is to preclude the debtor from denying the creditor the benefit of termination of the stay by filing another case reimposing the stay.'" (*quoting In re Berts*, 99 B.R. 363, 365 (Bankr. N.D. Ohio 1989))).

Under the BAP's decisions, the Court has discretion to decline to apply § 109(g)(2) mechanically when the circumstances warrant granting a debtor relief, *e.g.*, when an illogical, unjust or capricious result would follow, or when the benefit of a dismissal would inure to a bad faith creditor. This interpretive approach to § 109(g)(2) is arguably at odds with this Court's decision in *In re Perkins*, 94 I.B.C.R. 40 (Bankr. D. Idaho 1994). In that case, the Court relied upon § 109(g)(2) to dismiss a case where it appeared that the debtor was utilizing the serial filing of bankruptcy petitions to thwart her creditor's attempts to foreclose on her home. *Id*. at 42. In *In re Perkins*, the Court noted:

> The language of the statute requires only that the voluntary dismissal of the prior bankruptcy case follow in time the filing of a request for stay

MEMORANDUM OF DECISION - 12

> relief. . . . While interpreting the statute strictly
> will result in its application to more situations
> than necessary in order to prevent the abuse with
> which Congress was principally concerned, this
> Court is disinclined to judicially amend the
> statute to correct such a perceived flaw.  That
> Congress adopted a remedy to a problem that is
> over-broad under the circumstances does not
> justify ignoring the plain language of the statute.

*Id*. at 41.  As can be seen, in dismissing the debtor's case, the Court opted

for a strict approach to applying § 109(g)(2).  However, the Court also

observed that while its interpretation of § 109(g)(2) may differ from that of

the BAP, the same result would be appropriate under the BAP's

discretionary approach.  *Id*. at 42 n. 2.

Unlike the facts in *In re Perkins*, in this case, Debtors' voluntary

dismissal of the Feb. 2008 case appears to have had no connection to the

stay relief requested by and granted to Creditor.  Indeed, in their Dec. 2008

case, Debtors propose to reject the lease on the car and return it to

Creditor.  Thus, there is no evidence that Debtors refiled this case after

obtaining a voluntary dismissal of the Feb. 2008 case to again invoke the

automatic stay to stop Creditor from repossessing their car.  In other

MEMORANDUM OF DECISION - 13

words, it does not appear that Debtors are engaging in the sort of abuse

Congress was attempting to prevent in enacting § 109(g)(2). Instead, as

Debtors' counsel explains, and the Court accepts, the sole motivation for

Debtors' voluntary dismissal of the Feb. 2008 case, and filing of the Dec.

2008 case, was the ripening of their opportunity to obtain a discharge.

However, whether Debtors' motives run afoul of § 109(g)(2), the

Court need not use this case as an opportunity to reconsider whether that

statute must be applied mechanically, or whether the Court can, in the

exercise of discretion, "look the other way" where a refiling is not

motivated by a desire to obtain another stay against enforcement of a lien.

Instead, the disposition of Trustee's motion in this case is dictated by other

considerations, as discussed below.

### 3.  The Good Faith Requirement under § 1325(a)(7).

To obtain confirmation of a plan in a chapter 13 case, a debtor must

satisfy the requirements of § 1325(a). If the debtor is unable to do so, the

case may be dismissed under § 1307(c)(5). While the confirmation

requirements have, since enactment of the Code, always required a debtor

MEMORANDUM OF DECISION - 14

to show that a chapter 13 plan is "proposed in good faith . . .," *see* 11 U.S.C.

§ 1325(a)(3), it was not until the adoption of BAPCPA in 2005 that a debtor

was also required to demonstrate that "the action of the debtor in filing the

petition was in good faith" to achieve confirmation.  11 U.S.C. § 1325(a)(7).

However, even prior to BAPCPA, a chapter 13 case could be

dismissed when it was demonstrated to the court that the case was filed in

bad faith or as an attempt to unfairly manipulate the Code.  *See e.g., Leavitt*

*v. Soto (In re Leavitt*), 171 F.3d 1219 (9th Cir. 1999); *Eisen v. Curry (In re*

*Eisen)*, 14 F.3d 469 (9th Cir. 1993); *In re James*, 260 B.R. 498 (Bankr. D. Idaho

2001).

A.  Good Faith Standard.

Because BAPCPA effectively codified the good faith filing

requirement previously employed in the case law, that case law is

applicable to any analysis of § 1325(a)(7).  And while this chapter 13 case is

not before the Court at this time to determine whether Debtors' plan

should be confirmed, if the Court decides Debtors did not file their

petition in good faith, they will, as a result, be unable to confirm any plan.

MEMORANDUM OF DECISION - 15

Thus, it is appropriate for the Court to evaluate Debtors' motives in

resolving Trustee's motion to dismiss.

"Bankruptcy courts must determine a debtor's good faith on a case-

by-case basis, taking into account the particular features of each Chapter

13 plan." *In re Yochum*, 96.2 I.B.C.R. 77, 78 (Bankr. D. Idaho 1996) (citing *In*

*re Porter*, 102 B.R. 773, 775 (9th Cir. BAP 1989)).  In addition, "[t]he

bankruptcy court must consider the totality of the circumstances, *including*

*prepetition conduct*, in deciding whether the debtor has 'acted equitably.'"

*In re Tucker*, 989 F.2d 328, 330 (9th Cir. 1993) (emphasis supplied); *see also*

*In re Bowen*, 349 B.R. 814, 816 (Bankr. D. Idaho 2005); *In re Yochum*, 96.2

I.B.C.R. at 78.  Debtors bear the burden of establishing their plan is filed in

good faith.  *Smyrnos v. Padilla (In re Padilla)*, 213 B.R. 349, 352 (9th Cir. BAP

1997).

In making a determination of good faith, this Court should consider:


(1) whether the debtor has misrepresented facts
in his or her petition or plan, unfairly
manipulated the Bankruptcy Code, or otherwise

MEMORANDUM OF DECISION - 16

> filed the Chapter 13 petition or plan in an
> inequitable manner.
>
> (2) the debtor's history of filings and dismissals;
>
> (3) whether the debtor's only purpose in filing for
> Chapter 13 protection is to defeat state court
> litigation; and
>
> (4) whether egregious behavior is present.

*Ho v. Dowell (In re Ho)*, 274 B.R. 867, 876 (9th Cir. BAP 2002).  The Ninth

Circuit has stated that a good faith test "should examine the intentions of

the debtor and the legal effect of the confirmation of a Chapter 13 plan in

light of the spirit and purposes of Chapter 13." *Chinichian v. Campolongo*

*(In re Chinichian)*, 784 F.2d 1440, 1444 (9th Cir. 1986).  Finally, "successive

filings may be examined together and the result achieved by such filings

reviewed against the statutory requirements." *Downey Sav. and Loan Assoc.*

*v. Metz (In re Metz)*, 820 F.2d 1495, 1497 (9th Cir. 1987).

B.  Application of Good Faith Standard in this Case.

In response to Trustee's motion to dismiss, Debtors have been

candid and clear about their intentions in commencing the Dec. 2008 case.

MEMORANDUM OF DECISION - 17

In their view, they needed the protections from creditor collection actions

provided by chapter 13, and the automatic stay in particular, in February,

2008, even though they knew they were ineligible for a discharge at that

time. They point out that they proposed a good faith plan in that case,

which was ultimately confirmed. They were also current on their plan

payments when they voluntarily dismissed the Feb. 2008 case. The timing

of this dismissal and the prompt refiling, they say, are good evidence of

their sole motivation: to complete a chapter 13 plan and to obtain a fresh

start through a discharge. Debtors acknowledge they enjoyed the benefit

of the automatic stay in the Feb. 2008 case for ten months, and there had

been no significant changes in their financial circumstances when they

voluntarily dismissed the Feb. 2008 case and commenced the Dec. 2008

case.

In the Dec. 2008 case, Debtors have proposed a forty-nine month

plan. While Debtors' counsel stated at the hearing on Trustee's motion

that he did not know whether the forty-nine month plan was an attempt to

"piggyback" this second plan atop of the Feb. 2008 plan, that such was

MEMORANDUM OF DECISION - 18

intended appears obvious to the Court.  It can not be mere coincidence that

Debtors performed under their previous chapter 13 case for just over ten

months, and then proposed a forty-nine month plan in the Dec. 2008 case.

And though Debtors' counsel indicated during the motion hearing that

Debtors would agree to increase the Dec. 2008 case's plan duration to sixty

months, that offer can not obscure Debtors' attempt, when they filed the

Dec. 2008 petition, to effectively take a shortcut to obtaining a discharge.

    In a marked departure from prior law, by adopting § 1328(f) and

§ 1325(a)(7) in BAPCPA, Congress made clear that a debtor's right to

successive chapter 13 discharges should not be without limits.  The

mandatory language employed in § 1328(f) ("the court shall not grant a

discharge . . . if") expresses this resolve.  Debtors' approach to serial filings

could thwart that congressional intent.

    Debtors correctly argue that their scheme is not expressly prohibited

by the Code.  Indeed, chapter 13 cases are purely voluntary, and may be

dismissed upon a debtor's request under § 1307(b).  In addition, while

there may be consequences associated with serial filings, such as

MEMORANDUM OF DECISION - 19

limitations on the operation of the automatic stay under § 362(c)(3)-(4),

there is no express prohibition restricting serial filings outside of the

eligibility requirements in § 109(g).  In addition, the courts have

recognized that the filing of successive bankruptcy petitions does not,

alone, constitute bad faith *per se*.  *In re Metz*, 820 F.2d at 1497.

However, as Trustee points out, the issue in this case is not whether

Debtors could, in fact, file the Dec. 2008 case, but whether their proposed

plan is confirmable, a question which now requires an examination of

Debtors' good faith both in filing the petition and in proposing the plan.

Thus, while serial chapter 13 bankruptcy filings are not expressly

prohibited, these good faith requirements offer a stop-gap to what cases

will, or will not, proceed.

In considering the factors enumerated in the cases cited above,

several observations are in order.  First, it does not appear that Debtors

commenced the Dec. 2008 case in an attempt to defeat the progress of state

court litigation, nor have Debtors engaged in the sort of "egregious

conduct" that condemn some cases.

MEMORANDUM OF DECISION - 20

However, other factors suggest dismissal of this case is warranted.

In particular, Debtors' history of bankruptcy filings and dismissals is

directly relevant to whether they have attempted to unfairly manipulate

the Bankruptcy Code.  As this Court has stated:

> A court must apply broad standards and general
> definitions of bad faith to the specific facts of the
> case to determine if there is fraud, deception,
> dishonesty, lack of disclosure of financial acts *or*
> *an abuse of the provisions, purpose or spirit of the*
> *Bankruptcy Code.*  In other words, a court will
> have to determine if there has been an *unfair*
> *manipulation of the bankruptcy system* to the
> substantial detriment or disadvantage of
> creditors.

*In re Bowen*, 349 B.R. at 816 (emphasis supplied).  While, arguably,

Debtors' creditors may not be substantially disadvantaged should they be

allowed to confirm and complete their proposed plan, Debtors' tactics

present a potential for harm to the bankruptcy system, and the public's

trust in that system.

In Feb. 2008, Debtors filed a chapter 13 petition seeking to

reorganize their financial affairs through a plan calling for sixty-months of

MEMORANDUM OF DECISION - 21

payments to creditors. Based upon this record, the Court can only

conclude that Debtors had no intention of using that plan to solve their

financial difficulties, nor of completing performance of that plan. Instead,

the Court can only conclude they pursed the Feb. 2008 case solely to obtain

the benefit of the automatic stay, while biding their time until they were

eligible for discharge under § 1328(f).

Recall, as the Ninth Circuit observed in *In re Chinichian,* the good

faith test "should examine the intentions of the debtor and the legal effect

of the confirmation of a Chapter 13 plan in light of the spirit and purposes

of Chapter 13." *In re Chinichian*, 784 F.2d at 1444. In *In re Chinichian*, the

bankruptcy court concluded that the true purpose of the debtor's plan was

to defeat a state court action for specific performance, and that such

purpose violated the "spirit of the chapter." *Id*. at 1445. The Ninth Circuit

affirmed the bankruptcy court's finding that the debtor was not acting in

good faith.

In *In re Paley*, the bankruptcy court confronted two separate debtors

who were not eligible for discharge due to their prior chapter 7 discharges,

MEMORANDUM OF DECISION - 22

and who had either negative (-$88) or very low ($139) monthly net income available to make plan payments. *In re Paley*, 390 B.R. 53 (Bankr. N.D. N.Y. 2008). Both debtors proposed plans which essentially paid their attorney fees and the trustee's compensation, with no significant distribution to their creditors. In response to the trustee's argument that the debtors were attempting to "give" at a chapter 7 level, and "get" at a chapter 13 level, the court dismissed the cases, noting that the debtors' scheme represented "an abuse of the provisions, purpose, and spirit of the Bankruptcy Code." *Id*. at 59.

In this case, Debtors concede that they dismissed the Feb. 2008 case and refiled the Dec. 2008 case solely in order to receive a discharge. In making such concession, Debtors are implicitly admitting that they filed the Feb. 2008 case merely to take advantage of the automatic stay and other benefits of being in chapter 13, while at the same time knowing they did not intend to complete their confirmed plan. Recall, Debtors experienced no significant changes in their financial circumstances during 2008. Under such circumstances, the Court declines to condone Debtors'

MEMORANDUM OF DECISION - 23

artifice by allowing an opportunity to now propose and confirm a plan in the Dec. 2008 case. The Court concludes, all things considered, that Debtors' conduct amounts to an unfair manipulation of the bankruptcy system, and that it violates the spirit of chapter 13, and thus constitutes bad faith. Debtors' plan can not be confirmed because they can not show this case was filed in good faith as required by § 1327(a)(7).

C.  Conversion or Dismissal Under § 1307(c).

Under § 1307(c), the Court must engage in a two-step analysis regarding questions of conversion or dismissal. First, the Court must determine whether "cause" has been demonstrated under § 1307(c), and second, once "cause" has been established, the Court must choose between conversion or dismissal based upon the "best interests of creditors and the estate". 11 U.S.C. § 1307(c); *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006).

Having found requisite "cause" to act, the Court concludes that dismissal is appropriate here. A debtor's bad faith in filing a chapter 13 petition is cause for dismissal under § 1307(c). *In re Leavitt*, 171 F.3d at

MEMORANDUM OF DECISION - 24

1224; *In re Ho*, 274 B.R. at 876; *In re Weiss*, 05.4 I.B.C.R. 99, 99 (Bankr. D.

Idaho 2005).  There is no showing that creditors would benefit from

conversion of this case to chapter 7, Debtors may not be able to pass the

"means test" for chapter 7 relief under § 707(b), and in any event, under

§ 727(a)(8), would not be eligible for a discharge under chapter 7.

D.  Bar to Refiling.

In addition to dismissing this case, Trustee's motion also asks the

Court to bar Debtors from filing another chapter 13 case "for such amount

of time as [the Court] deems reasonable and just."  Motion to Dismiss at 2,

Docket No. 12.  The Court has authority to order such a bar under § 349(a):

> Section 349(a) is not ambiguous, and
> plainly provides that the bankruptcy court may,
> at its discretion and for cause, bar the discharge
> of existing debt.  Inherent in this authority is the
> power to bar subsequent bankruptcy petitions
> that seek to discharge such debt.
> Furthermore, cases which have looked to
> the legislative history of § 349 note that it was
> intended to provide courts with authority to
> control abusive filings "beyond the limits of
> § 109(g)," even in cases where the bankruptcy
> court enjoined the filing by a debtor of any case
> under Title 11 for a period greater than 180 days.

MEMORANDUM OF DECISION - 25

*Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 939 (9th Cir. BAP 1997), *aff'd*, 171

F.3d 1219 (9th Cir. 1999) (internal citations omitted); *see also Cox v. Noordam*

*(In re Noordam)*, 03.2 I.B.C.R. 136**,** 139-40 (Bankr. D. Idaho 2003).

 In this case, if Debtors respond to the Court's dismissal of the Dec.

2008 case by filing yet another successive chapter 13 petition, little will be

accomplished by this exercise.  Presumably, Trustee would again seek

dismissal, and absent compelling circumstances not apparent from the

record, the Court would be inclined to again grant dismissal.

 In addition, the Court is disinclined to allow Debtors any benefit on

account of their scheme to evade the § 1328(f) limitations on their right to

another bankruptcy discharge.  To prevent this, Debtors should not be

given any credit against the four years' time during which they were not

eligible for a chapter 13 discharge (following the 2004 chapter 7), that they

spent protected by the automatic stay in the Feb. 2008 and Dec. 2008 cases.

It would be an idle gesture indeed for the Court to condemn their conduct

if Debtors could merely file yet another chapter 13 case to obtain a

discharge.

MEMORANDUM OF DECISION - 26

Therefore, the Court will impose a bar on Debtors' right to file another chapter 13 case for thirteen (13) months from the date of dismissal of this case.  Hopefully, this bar shall serve as a sanction for Debtors' conduct, and discourage them or others from attempts to improperly take advantage of the bankruptcy system.

MEMORANDUM OF DECISION - 27

### *Conclusion*

Trustee's Motion to Dismiss will be granted by separate order.  The

order will provide a temporary bar on Debtors' right to again file for

chapter 13 relief.

Dated:  March 13, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 28